# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| AZIM WALEED EPPS, | : | CIVIL ACTION NO. |
| BOP Reg. # 57799-019, | : | 2:12-CV-13-RWS-JCF |
| Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 2:06-CR-28-RWS-JCF-1 |
| | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
| Respondent. | : | 28 U.S.C. § 2255 |

## <u>MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION</u>

Now before the Court are Movant's 28 U.S.C. § 2255 motion to vacate his sentence (Doc. 94), with supporting brief (Doc. 94-1) and exhibits (Docs. 94-2 *et seq.*); Respondent's response (Doc. 101) with supporting exhibits (Docs. 101-1 *et seq.*); and Movant's reply (Doc. 103). Because Movant's first two grounds for relief were rejected by the Eleventh Circuit on direct appeal and Movant has failed to demonstrate ineffective assistance of counsel with respect to his *Batson v. Kentucky*, 476 U.S. 79 (1986) challenge to the jury selection process at his trial, **IT IS RECOMMENDED** that his motion to vacate be **DENIED**.

## I.     <u>Procedural History</u>

On August 22, 2006, a federal grand jury sitting in the Northern District of Georgia indicted Movant on three counts: (1) armed bank robbery, (2) possession of a firearm in furtherance of a crime of violence, and (3) possession of a firearm by a

convicted felon. (Doc. 1). Movant filed a motion to suppress evidence, which this Court denied. (*See* Docs. 10, 33, 36, 37, 40, 42, 45, 48). The government dismissed count three, and the jury convicted Movant on the remaining counts. (Docs. 63, 68). On April 27, 2009, this Court sentenced Movant to a 360-month term of imprisonment. (Doc. 72). Movant then filed a timely notice of appeal. (Doc. 73).

On August 6, 2010, the Eleventh Circuit affirmed Movant's convictions and sentences. *United States v. Epps*, 613 F.3d 1093, 1095 (11th Cir. 2010). The Eleventh Circuit noted that Movant had raised four claims on appeal, two "contend[ing] that the district court erred in denying his motion to suppress evidence and also that the government improperly vouched for a witness's credibility during closing argument," *id.*, which claims the Eleventh Circuit addressed at length, and "two other arguments," which the Eleventh Circuit denied summarily as "without merit":

> First, the district court did not clearly err in denying [Movant's] motion under *Batson v. Kentucky*, 476 U.S. 79 (1986). Regardless of whether [Movant] established a *prima facie* case of discrimination, the potential juror's misunderstanding of the jury questionnaire was a plausible, race-neutral basis for the government's exercise of a peremptory strike. Second, the district court did not abuse its discretion in sentencing [Movant] to 360 months imprisonment. The district court properly reviewed the mitigating evidence, weighed the 18 U.S.C. § 3553(a) factors, and considered the arguments of counsel when it imposed the sentence.

*Id.* at 1095 n.1 (citation altered).

2

The Eleventh Circuit set forth the following factual summary of the events leading to Movant's arrest and trial:

On August 11, 2006, an African-American man with dreadlocks entered the Gainesville Bank and Trust. He approached a teller and said, "This is a robbery, give me your money." As the teller was gathering the money, he told her to hurry up and not to make him pull his gun. Both the first teller and an adjacent teller gave the robber money and dye packs, which he placed into a black bag.

In a parking lot near the bank, a woman was approaching her car. An African-American man with braided hair demanded her car keys, whereupon she hit him with the magazine she had in her hand. The would-be carjacker then went over to an 83-year-old man sitting in his blue Chevrolet Cavalier, pulled the elderly man out of the car and onto the pavement, and drove off.

Deputy Paul Kent was responding to the bank robbery when he heard a report about a blue Cavalier being carjacked. There were a number of police cars present when he arrived at the scene of the carjacking, so he instead proceeded across the street in the direction of a shopping mall. As he was approaching the mall, he noticed a blue Cavalier parked at an angle next to a pawnshop, with its driver's door open. He continued toward the mall, and he saw a man running quickly through the mall parking lot with a white bag in his hand. The path that the runner was taking led away from the Cavalier toward the mall entrance. Deputy Kent, who had his lights and siren going, used his car's P.A. system two or three times to announce his presence and order the individual to stop. The fleeing individual looked back over his shoulder at the police car and pointed a gun in the deputy's direction, while continuing to run. A bystander in the mall parking lot also saw the gun being pointed at the officer. At this point, the runner was approximately ten feet in front of the police car. Deputy Kent then attempted to stop the man by hitting him with the front right corner of the patrol car. The man rolled off the car's hood and landed on the ground. Both the gun and the white bag went flying, as well as another object later determined to be a

3

pocket knife. Deputy Kent got out of his car and covered the suspect with his firearm until another officer arrived and handcuffed the individual. The man arrested turned out to be [Movant].

[Movant] was already in custody by the time Investigator Margaret Dawson arrived to process the scene. She took photographs of the gun, knife, and white bag where they came to rest on the ground near the patrol car. The white bag was a pillowcase, with pink stains on it. The pillowcase was later moved to the back of a police vehicle, where the police opened it and found the following items: currency that was partially burned and marked with red dye; two dye packs; a dreadlock wig; a black bag; a shirt; and a can of pepper spray.

[Movant] was taken to a nearby hospital for treatment of his abrasions. He informed the police that he wanted to speak with the lead investigator and was interviewed by FBI Agent Joseph Thompson approximately three hours after the bank robbery took place. Agent Thompson advised [Movant] of his rights to remain silent and to consult with an attorney. [Movant] signed a waiver of rights form, which was also signed by Agent Thompson and by a witness, Investigator Kevin Gaddis of the Gainesville Police Department. [Movant] then confessed to the bank robbery, carjackings, and attempt to flee from the police, although [Movant] denied pointing his gun at Deputy Kent.

After being indicted, [Movant] filed a motion to suppress the evidence found in the pillowcase. Deputy Kent and Investigator Dawson testified at an evidentiary hearing. The magistrate judge subsequently recommended that the motion to suppress be denied, a recommendation that the district judge approved and adopted over [Movant's] objections.

*Id.* at 1096-97.

Noting that Movant "manifested his subjective expectation of privacy by placing personal items inside the pillowcase and holding it shut in one hand," *id.* at 1098, the Eleventh Circuit nevertheless rejected his Fourth Amendment challenge to the seizure

4

of the pillowcase because its contents "could be inferred from its outwardly visible stains and the circumstances under which the police obtained it, [and thus] was one of those containers that 'by [its] very nature cannot support any reasonable expectation of privacy.' " *Id.* at 1099 (quoting *Arkansas v. Sanders*, 442 U.S. 753, 764 n.13 (1979)). "The pillowcase therefore fell outside the protective ambit of the Fourth Amendment, and the police did not violate [Movant's] constitutional rights when they opened the pillowcase without first obtaining a warrant." *Id.*

The Eleventh Circuit also rejected Movant's fruit-of-the-poisonous-tree argument, noting that

> [a]fter announcing his presence and directing [Movant] to stop, Deputy Kent saw [Movant] pointing a pistol at him from about ten feet away, which made the officer fear for his own safety. A bystander in the mall parking lot corroborated the deputy's testimony about the pointing of the weapon. Deputy Kent thus had probable cause to believe that [Movant] had committed the felonies of aggravated assault and aggravated assault upon a peace officer.

*Id.* The Eleventh Circuit concluded that "[t]he deputy's subsequent detention of [Movant] was a lawful warrantless seizure, which means that none of the evidence obtained from the seizure was tainted. The district court properly rejected [Movant's] argument that the gun, knife, and pillowcase should be suppressed as the fruits of an illegal seizure." *Id.* at 1100 (citation omitted). The Supreme Court denied Movant's petition for certiorari review initially and upon reconsideration. *See Epps v. United*

5

*States*, 131 S. Ct. 1526 (Feb. 22, 2011); *id.* at 3051 (June 20, 2011).

## II.     28 U.S.C. § 2255 Motion to Vacate and Government's Response

### A.     The § 2255 Motion

Movant raises four grounds for relief in his brief supporting his § 2255 motion to vacate.   First, he claims that the search described above violated the Fourth Amendment "because it was not a search incident to arrest." (Doc. 94-1 at 2).  Movant notes that at his sentencing hearing he attempted to challenge under *Arizona v. Gant*, 556 U.S. 332 (2009), the denial of his motion to suppress—while "conced[ing] that *Gant* was not analogous to his case because of certain exigent circumstances"—but this Court rejected the attempt because it found important differences between the facts in *Gant* and those in this case.  (*Id.* at 5-6).  Movant also argues that he is entitled to review of his Fourth Amendment claim under *Stone v. Powell*, 428 U.S. 465 (1976). (*Id.* at 9-16).  He argues that "[b]ecause the Circuit Court failed to fully and fairly consider [his] search incident to arrest issue, [it] follows that [he] did not have a 'full and fair hearing[,]' resulting in an erroneous decision rendered because of a failure to apply [the] correct constitutional standard."  (*Id.* at 16).

In his second ground for relief, Movant claims that his "constitutional right to a fair trial and impartial jury was violated when jurors were challenged based upon protected characteristics, and trial counsel was ineffective for failing to effectively

6

challenge this error, in violation of the Sixth Amendment." (*Id.* at 21). Specifically, Movant complains about the government's successful use of a peremptory strike against Mr. Grimes, the lone African-American in the jury pool, despite Movant's *Batson* challenge to the strike at trial. (*Id.* at 21-23). Movant notes that the government's allegedly race-neutral reason for striking Mr. Grimes was based in part on Mr. Grimes's perceived disability (*id.* at 28), even though the Court failed to strike Mr. Grimes *sua sponte* for cause based on disability, as it had done to another member of the jury pool before the government struck Mr. Grimes (*id.* at 21-22, 31).

Movant argues that, under the prevailing norms for *Batson* challenges, "[h]ad the District Court effectively performed the *Batson* test, it would have been patently clear that since there was no credible reason for the strike, it must have been made on the basis of Mr. Grimes's race." (*Id.* at 34). He argues further that "[t]here is no . . . probative evidence on the record in this case [to support this Court's denial of his *Batson* claim]. [That denial] relies merely on the [Court's] credibility finding . . ., [which] a reviewing court cannot be sure was made [after] consideration of all the evidence presented by the defense and the weaknesses pointed out in the prosecutor's proffered reasons." (*Id.* at 35). Movant argues that racial discrimination during jury selection is a "structural error" that can be remedied only by a new trial. (*Id.* at 39).

Finally, Movant claims three instances of ineffective assistance of counsel with

7

respect to his *Batson* challenge, arguing that counsel did not (1) seriously challenge the government's race-neutral reasons for striking Mr. Grimes, (2) object to this Court's failure to perform the third step of the *Batson* analysis, and (3) raise on direct appeal the Court's failure to do so. (*Id.* at 39-42).

**B.    The Government's Response to the § 2255 Motion**

The government responds that Movant's Fourth Amendment and *Batson* claims are the same ones that he raised unsuccessfully on direct appeal. (Doc. 101 at 15-17).

> First, as to the motion to suppress, [Movant] has not re-characterized or rebranded that argument, but rather, he argues, yet again, that the search of the pillowcase violated the Fourth Amendment. [Movant] has simply re-raised the identical argument, which the Eleventh Circuit has already rejected. . . . Second, as to the *Batson* challenge, [Movant] slightly re-characterizes his argument: while the argument on direct appeal centered on the first step and second steps of *Batson*, the [Movant] here raises the same arguments again but ultimately expands upon those arguments to include the third step as well.

(*Id.* at 17).

The government next argues that Movant has procedurally defaulted any claim related to the alleged disability of a jury pool member other than Mr. Grimes because he failed to raise the issue on direct appeal, and, in any case, "the law does not recognize a *Batson* challenge based on disability." (*Id.* at 19). The government notes that Movant "offers nothing" to justify his procedural default of this claim. (*Id.* at 21). The government contends that at least one court of appeals has declined to extend the

8

scope of a *Batson* challenge to include disabled jurors. (*Id.* at 21-23 (citing *United States v. Watson*, 483 F.3d 828 (D.C. Cir. 2007)).

Regarding Movant's first claim of ineffective assistance of counsel, the government notes the following:

> In response to [Movant's] *Batson* challenge, the Government offered four race-neutral reasons in support of its peremptory challenge: (1) the disputed venireman had been "run over," similar to the facts present in this case; (2) the disputed venireman wore dark sunglasses in the courtroom and had an eye recently removed; (3) the disputed venireman failed to respond when the court clerk called his name[;] and (4) the disputed venireman did not understand questions on the jury questionnaire form. (Doc. 80, at 90-91). On collateral attack, [Movant] contends that counsel should have contested those reasons but he does not specify any inconsistencies that would cast doubt on the legitimacy of the Government's proffered, race-neutral reasons. [Movant], in passing and without citation to the record, merely claims that another juror was struck for cause based on disability. (Doc. 94-1, at 31). [Movant] does not specify what type of disability or provide any further details.

(*Id.* at 27 (footnote omitted)). With respect to Movant's remaining two claims of ineffective assistance of counsel, the government argues "that the district court reached the third step of *Batson*, albeit without great discussion." (*Id.* at 28). In fact, the government notes, this Court stated the following in response to Movant's *Batson* challenge:

> The Court finds that, without having made a finding as to any prima facie showing, but even if the striking of this sole minority juror constitutes that, the Court finds that the government has stated a race neutral basis that is supported based upon the Court's recollection of what transpired

9

during voir dire; and therefore, I would deny the motion.

(*Id.* at 29 (citing Doc. 80 at 91) (formatting altered)).  "In other words, the district court found that the Government's race-neutral reason was believable and not pretextual[,]" thus "meeting the requirements of the third step of *Batson*."  (*Id.* at 29-30).

The government argues that Movant's ineffective-assistance claims fail not only because he cannot demonstrate deficient performance by counsel but also because he was not prejudiced by counsel's alleged failures—"there were no inconsistencies to point out, and therefore, had counsel [attempted to do so], the district court would have rejected [the attempt].  Likewise, . . . [Movant] cannot show that the outcome would have been different had counsel objected to the combination of steps two and three of *Batson* because the district court, in fact, reached the third step of *Batson*."  (*Id.* at 30).  The government argues, finally, that Movant has not, and cannot, demonstrate "prejudice as to the ultimate issue, that is, purposeful discrimination," inasmuch as he

> does not point to the record to show that the proffered reasons for the peremptory strike of the disputed venireman applied equally to the disputed venireman and other, accepted jury venire members.  In other words, [Movant] does not even argue that other jury venire members had been 'run over,' had poor eyesight, poor hearing, and failed to understand questions on the jury form.

(*Id.* at 31 (footnote omitted)).

## C.   **Movant's Reply**

Movant replies that this Court is authorized to consider a claim based on an intervening change in the law even if he raised the claim earlier.[1] (Doc. 103 at 1-3). Movant also argues that he is not procedurally barred from raising claims of ineffective assistance of counsel in his § 2255 motion and that *Batson* error is a structural error that does not require a showing of prejudice to justify a new trial. (*Id.* at 3-7).

## III.  Discussion

### A.  The Standards For Review of a 28 U.S.C. § 2255 Motion

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  It is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  Moreover, in ruling on a § 2255 motion, a federal district court "is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340,

---

[1] "At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012).  "The question, then, is whether the Supreme Court's . . . decision [at issue] is a change in the . . . law that [controlled] at the time of [Movant's] sentencing and at the time [the appellate court] affirmed his sentence." *Id.* at 684-85.

AO 72A
(Rev.8/82)

1343 (11th Cir. 2000); *see Thomas v. United States*, 572 F.3d 1300, 1304 (11th Cir. 2009) (same).

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Carrazana v. United States*, No. 12-10389, 2013 U.S. App. LEXIS 1127, at *2-3 (11th Cir. Jan. 17, 2013) (applying two-part *Strickland* test in § 2255 context). "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. The analysis involves two components, but a court need not address both if the movant "makes an insufficient showing on one." *Id.*

First, the court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the movant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the movant's burden of persuasion—though the presumption is not insurmountable—is

12

a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc).

Second, the court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel. "A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)). However, appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant." *Lucey*, 469 U.S. at 394; *see Robbins*, 528 U.S. at 288 (noting that "it is difficult to demonstrate that [appellate] counsel was incompetent" for failing "to raise a particular claim," and "[g]enerally, only when ignored issues are clearly stronger than those

13

presented, will the presumption of effective assistance of counsel be overcome"
(internal quotations omitted)); *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991)
(stating that neglected claim satisfies test for ineffective assistance only if claim would
have had "a reasonable probability of success on appeal").

### B. Movant's Fourth Amendment Claim Fails Because the Eleventh Circuit Rejected This Claim on Direct Appeal

Movant argues that the search conducted at the scene of his arrest was
unconstitutional because it was not incident to a lawful arrest. He also contends that
his argument based on the holding in *Arizona v. Gant*, 556 U.S. 332 (2009), which he
asserts is an intervening change in the controlling law, was not given a full and fair
hearing. (*See* Doc. 94-1 at 2-21; Doc 103 at 1-3). However, *Gant* was decided on
April 21, 2009, six days before Movant was sentenced, so that the Supreme Court's
holding in *Gant* cannot represent an intervening change in the law entitling Movant to
consideration of his ground one claim for relief, despite his having raised the same
claim on direct appeal. *See Rozier*, 701 F.3d at 684-85. In fact, Movant based his
argument on direct appeal in part on the *Gant* holding. (*See* Doc. 101-1 at 40 *et seq.*).
The Eleventh Circuit rejected the argument and Movant's Fourth Amendment claim
because it found both that Movant's arrest was based on probable cause to believe that
he had committed a crime and that Movant had no legitimate expectation of privacy

14

in the object of the search, the pillowcase he was carrying when stopped, and thus he had no Fourth Amendment right to challenge the search. *See Epps*, 613 F.3d at 1098-1100. Accordingly, this Court need not consider the merits of Movant's first ground for relief, which is due to be denied. *See Nyhuis*, 211 F.3d at 1343; *see also Thomas*, 572 F.3d at 1304.

> ### C.  Movant's Batson Claim Fails Because the Eleventh Circuit Rejected a Virtually Identical Claim on Direct Appeal

"*Batson* requires a court to undertake a three-step analysis to evaluate equal protection challenges to a prosecutor's use of peremptory challenges." *McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1256 (11th Cir. 2009). The test is as follows:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003) (citations omitted)). On direct appeal, Movant noted that, in response to his *Batson* motion, this Court "required the government to proffer race-neutral reasons for removing Mr. Grimes from the jury pool[,]" and the prosecutor did so.[2] (Doc. 101-1 at 36). After the

---

[2] The prosecutor responded to this Court's inquiry as follows:

> Your honor, . . . Mr. Grimes[] stated that he had been disabled because he was run over. That obviously has application to this case when the defendant was

15

government stated its reasons for striking Mr. Grimes, this Court "stated 'without having made a finding as to any *prima facie* showing . . . that the government has stated a race neutral basis that is supported based upon the court's recollection of what transpired during voir dire.' " (*Id.* at 36-37 (quoting trial record)); (*see* Doc. 101-5 at 57-59).

Movant argued on direct appeal that "[t]he prosecutor's *post hoc* rationalizations [for striking Mr. Grimes were] not supported by any questions propounded during voir

---

apprehended after being hit with the deputy sheriff's vehicle. I was concerned about that.

He was the only juror missing an eye. He is missing his left eye. He appeared in court. Even before I knew about the missing eye, he had large wrap-around, very dark glasses on. He was the only one who appeared that way. I was concerned about his eyesight, and then I learned that he lost an eye years ago and had it taken out recently.

There was also the matter, and . . . this would have been reason enough for me alone, that when his name was called, he did not initially respond. That showed me that he had trouble hearing. Everyone else was responding when their name was called. He responded the second time when his name was called more loudly.

Later during the court's conversation with him, there was one time when he did not, did not hear your question, judge, and asked that it be repeated. So I had concerns about his hearing.

Further, and again, this would stand alone, I think, even by itself, as the court pointed out, he misunderstood a question on the court's questionnaire. He is disabled. He was the only qualified juror left who, I believe, was listed as disabled. All these are singular reasons that had nothing to do with the color of his skin that are ample bases for what is a peremptory challenge which can be made for no reason, but I had more than good reason beyond no reason.

(Doc. 101-5 at 58-59).

dire, or for that matter, any concerns expressed to the district court" and that "there were no questions of Mr. Grimes about his disability, his sight, his hearing ability, the fact that he had been run over, or whether the fact that [Movant] had also been run over would impact his ability to fairly decide the case." (Doc. 101-1 at 38-39). Movant argued further that "[t]he government's failure to inquire into these 'concerns' demonstrates that the government's reasons were pretextual." (*Id.* (citing *Parker v. Allen*, 565 F.3d 1258, 1271 (11th Cir. 2009) (noting that "[q]uestions arise regarding the credibility of the explanation and the possibility that the explanation is pretextual . . . when [among other things] the prosecution fails to engage in a meaningful voir dire examination on a subject that it alleges it is concerned" about))).[3]

_____

[3] In his direct-appeal reply brief, Movant further elaborated on these arguments:

> The government argues the district court was correct in denying [Movant's] *Batson* motion because the prosecutor proffered four race-neutral reasons to exercise the strike against Mr. Grimes: (1) he was run over by a vehicle; (2) he had lost his left eye; (3) when the deputy clerk called his name the juror did not reply; and (4) his apparent misunderstanding of questions. Initially, the government's third rationale is completely unsupported by the record. The transcript of the proceedings do not indicate Mr. Grimes failed to respond to the deputy clerk calling his name and the government concedes this. Secondly, and perhaps most importantly, the government never asked a single question regarding the other purported reasons. For instance, it would be logical for a party to determine if a juror's issue with eyesight might impact that juror's ability to view some of the evidence. Indeed, the government had a demonstrative aid that it intended to show the jury during trial. Yet the government never asked Mr. Grimes if lo[]sing his eye would prevent him, or even impair his ability, to see the exhibit. The same is true of the fact that Mr. Grimes had been run over by a vehicle. Although one would expect the government to further inquire on the subject if it indeed was a concern, the government failed to do so. Lastly, the record is less than clear if it was indeed[] Mr. Grimes who answered any questions incorrectly or was confused. The district court's soliloquy

17

In his § 2255 motion, Movant argues at length that this Court erred by denying his *Batson* challenge based on the Court's general recollection of voir dire, without making specific factual findings regarding each of the government's proffered race-neutral reasons for striking Mr. Grimes. (*See generally* Doc. 94-1 at 21-39). Movant fails, however, to offer arguments different in kind from those offered by his counsel on direct appeal and rejected by the Eleventh Circuit, except that he does note that a different juror was struck for cause based on that juror's professed disability, whereas Mr. Grimes was not struck for cause, although Movant acknowledges that Mr. Grimes did not profess to be disabled, as the juror struck for cause apparently did.[4] (*See id.* at 21-24; *id.* at 37 (noting, "Mr. Grimes was not struck for cause based upon any disability that he may have, so the only plausible reason for the strike is that Mr. Grimes was the only member of the jury pool that was an African-American.")).

_____

> on the matter seems to indicate that it was juror number 11, rather than Mr. Grimes who was confused. Even if it was Mr. Grimes, the government, again, asked no questions regarding any confusion.
>
> . . . Contrary to the government's assertion, there was no meaningful voir dire on the areas proffered as race-neutral reasons for striking Mr. Grimes. There were only initial comments that went without further exploration. Further, and most telling, there was **no voir dire at all by the government** regarding these areas.

(Doc. 101-3 at 21-23 (citations omitted)).

[4] Movant also notes in his reply brief herein that the government misconstrued the discussion of disability in his initial brief as an argument for using "disability as a basis for challenging a peremptory strike," whereas the discussion "was merely an aside, and not the basis for any grounds for relief." (Doc. 103 at 4).

For the most part, then, the same arguments that Movant raises in his § 2255 motion and supporting brief are those that his appellate counsel raised on direct appeal, which arguments the Eleventh Circuit rejected in summarily denying Movant's *Batson* claim. Therefore, this Court need not reach the merits of Movant's ground two *Batson* claim, which is due to denied. *See Nyhuis*, 211 F.3d at 1343; *see also Thomas*, 572 F.3d at 1304.

**D.** **Movant's Ineffective Assistance of Counsel Claims Fail Because He Has Not Demonstrated Prejudice Arising From Counsel's Alleged Errors**

Finally, as noted above, Movant claims three instances of ineffective assistance of counsel with respect to his *Batson* challenge, arguing that counsel did not (1) seriously challenge the government's race-neutral reasons for striking Mr. Grimes, (2) object to this Court's failure to perform the third step of the *Batson* analysis, or (3) raise that failure on direct appeal. (Doc. 94-1 at 39-42). Movant argues that "[c]ounsel failed to point out the inconsistencies within the record and the allegations leveled by the government regarding Mr. Grimes, and meet the burden of persuasion regarding racial motivation that he undertook as the opponent of the strike." (*Id.* at 40). Movant also argues that counsel's failure to object at trial to this Court's omission of the third *Batson* step, and to raise the claim on direct appeal, constituted deficient performance that prejudiced Movant. "The trial court's error in applying the rule in

19

*Batson* is apparent on the face of the transcript of the jury selection proceedings. . . .

Had the claim been presented properly, the [Eleventh Circuit] would have had two

options: remand the case for an evidentiary hearing concerning the prosecutor's motive

for peremptorily challenging the black venire person, or remand the case for a new

trial." (*Id.* at 40-41).

On direct appeal, the Eleventh Circuit concluded that this Court "did not clearly

err" in denying Movant's *Batson* challenge because Mr. Grimes's "misunderstanding

of the jury questionnaire was a plausible, race-neutral basis for the government's

exercise of a peremptory strike." *Epps*, 613 F.3d at 1095 n.1. Accordingly, to prevail

on direct appeal, Movant would have needed to show that the government's strike was

not race-neutral by, for example, demonstrating that the government failed to strike a

juror of a different race who also misunderstood the jury questionnaire. *See United*

*States v. Alston*, 895 F.2d 1362, 1374-75 (11th Cir. 1990) (Hatchett, J., specially

concurring) (noting that "[w]hen an allegation of pretext is raised, the defendant bears

the burden of convincing the district court that the proffered reasons are pretextual by

introducing evidence of comparability," and that "[t]he lesson to claimants of *Batson*

violations and prosecutors is that comparisons must be made between the black jurors

removed from jury service and the white jurors remaining for service"); *see also*

*Atwater v. Crosby*, 451 F.3d 799, 807 (11th Cir. 2006) (citing J. Hatchett's

20

concurrence in *Alston*).

The *Atwater* court, albeit applying the deferential standard of review under 28 U.S.C. § 2254, concluded that the state courts had not violated *Batson* because

> the trial court went beyond a mere finding that the state articulated a race neutral reason for the strike -- the trial court engaged in some evaluation of the prosecutor's reasons for the strike and determined that the race neutral reason given for striking venire member Ellison was supportable. Therefore, the third step of the *Batson* analysis was touched. The trial judge upheld the peremptory strike after agreeing that Ellison exhibited some difficulty with her responses to the prosecution question. The defendant then failed to follow through, or come forward with any concrete pretext evidence or argument.

*Id.* The Eleventh Circuit noted that in response to defendant's challenge to the prosecutor's strike, arguing that "the only reason the State is striking Ms. Ellison is because she is the sole black person on the jury panel," the trial court stated, "The Court, in observing that particular juror, thought that she did respond with difficulty to the questions that were asked. Based upon the answers she gave and the demeanor, I believe the State's peremptory challenge will be well-taken." *Id.* The procedural history in *Atwater*, then, is remarkably similar to the history of this case, and the outcome there suggests the correct outcome here, namely, denial of Movant's post-conviction challenges to the jury selection process at his trial.

This Court is well aware that the Eleventh Circuit has "strongly caution[ed] courts that the failure to address each of *Batson*'s steps creates the risk of serious

AO 72A
(Rev.8/82)

constitutional error." *See Atwater*, 451 F.3d at 807. The third *Batson* step requires that "the trial court determine[] whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (noting that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike"). Here, Movant has not carried his burden of proving purposeful discrimination, nor has he demonstrated that trial or appellate counsel missed some "evidence of comparability," *see Alston*, 895 F.2d at 1374, that might have persuaded this Court or the Eleventh Circuit that the government's rationale for striking Mr. Grimes was pretextual.

Movant's attempt to establish the disabled white juror who was struck for cause as a possible comparator is unavailing because that juror was struck before the government exercised its peremptory strike against Mr. Grimes. The Court declines Movant's apparent invitation to speculate that the government would have struck Mr. Grimes but would not have struck the white disabled juror if the latter had remained in the jury pool. Such speculation is not appropriate here, where "to obtain collateral relief, [Movant] must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166.

Movant has not called the Court's attention to any prospective juror comparable to Mr. Grimes—given the latter's multiple, race-neutral issues, as this Court touched

AO 72A
(Rev.8/82)

upon in its admittedly brief step-three *Batson* analysis at trial—and therefore has not shown that trial counsel's performance was deficient for failing to alert the Court during voir dire to any such comparator. Movant also has not shown that he was prejudiced by trial counsel's failure to develop such evidence, which apparently does not exist, or to challenge this Court's step-three *Batson* analysis. *See Atwater*, 451 F.3d at 807. Finally, Movant has not shown that the outcome in the Eleventh Circuit would have been different had counsel challenged on appeal this Court's step-three *Batson* analysis.

In *United States v. Edouard*, 485 F.3d 1324 (11th Cir. 2007), the Eleventh Circuit had before it a *Batson* challenge to "the Government's use of four of its five peremptory challenges to strike black venirepersons." *Id.* at 1341. The court found no *Batson* error in those strikes. *Id.* at 1343.

> During voir dire, [the defendant] made *Batson* objections after the Government used its peremptory challenges to strike four black venirepersons. In response to [the defendant's] first *Batson* objection, the prosecutor stated that he had struck the venireperson because her "English could be an issue." The district court overruled [the defendant's] objection, stating that the prosecutor had "given a race neutral reason" for the strike. In response to [the defendant's] second *Batson* objection, the prosecutor explained that it had struck the juror in question because the man was wearing sunglasses and it was therefore difficult to determine his reactions to certain questions. After hearing the prosecutor's explanation, the court summarily overruled [the defendant's] objection without stating the reason for its decision.

AO 72A
(Rev.8/82)

In response to [the defendant's] third *Batson* objection, the prosecutor contended that he had struck the venireperson because she was unemployed and it was very difficult to understand her answers to questions. As with [the defendant's] previous *Batson* objection, the court summarily overruled this objection without explanation. And in response to [the defendant's] fourth and final *Batson* objection, the prosecutor contended that he had struck the venireperson "because she answered the questions very quickly," neither he nor his co-counsel were "able to write down anything she had to say," and they therefore knew "nothing about her." The prosecutor also stated that there was only one other venireperson remaining, he knew "a lot more or some important things about" the remaining venireperson than he did about the black female he sought to strike, and it was his "call" as to which of the remaining venirepersons he would strike. Concluding that the prosecutor's proffered rationale was a "strategic reason," the district court overruled [the defendant's] objection.

*Id.* at 1342.[5]

The Eleventh Circuit stated that the trial "court must evaluate the credibility of the stated justifications [for the government's peremptory strikes] based on the evidence before it. This credibility determination is 'a pure issue of fact, subject to

---

[5] With respect to the defendant's step-one *prima facie* case, which was not at issue, *see Edouard*, 485 F.3d at 1342-43, the Eleventh Circuit noted that

> "the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal." *United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990) (quotation marks omitted). The defendant must point to "facts and circumstances that support the inference of discrimination, such as a pattern of discriminatory strikes, the prosecutor's statements during voir dire suggesting discriminatory purpose, or the fact that white persons were chosen for the petit jury who seemed to have the same qualities as stricken black venirepersons." *Id.* (citation omitted).

*Id.* at 1341 n.6.

review under a deferential standard . . . [and] peculiarly within a trial judge's province.' " *Id.* (citation omitted) (quoting *Hernandez v. New York*, 500 U.S. 352, 364-65 (1991) (plurality opinion)).

The Eleventh Circuit "note[d] that the district court improperly condensed the second and third steps of the *Batson* inquiry by summarily overruling [the defendant's] objections and/or failing to consider whether [he] had refuted the race-neutral explanations proffered by the Government[,]" which "creates the risk of serious constitutional error." *Id.* at 1343 (quotations omitted). "Nevertheless, given the great deference afforded to the determinations of trial courts regarding the believability of the prosecutor's race-neutral explanations for its strikes," the Eleventh Circuit could not "conclude that the district court clearly erred in overruling [the defendant's] *Batson* objections." *Id.* The court found that "the prosecutor's reasons for striking the black venirepersons . . . were not so 'implausible or fantastic' as to be found pretextual or incredible." *Id.* (noting that "there is no evidence that the prosecutor failed to strike similarly-situated white jurors").

Here, the same reasoning applies. The prosecutor's reasons for striking Mr. Grimes were not so implausible or fantastic as to be found pretextual. In fact, they were much more substantial than the reasons offered for striking four African-American venirepersons in *Edouard*, of which the Eleventh Circuit ultimately

25

approved.  Accordingly, all of Movant's claims of ineffective assistance of counsel regarding the failure of his *Batson* challenge are due to be denied.

## IV.  <u>Certificate of Appealability</u>

A federal prisoner must obtain a certificate of appealability (COA) before appealing the denial of a motion to vacate.  28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B).  A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).  A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

AO 72A
(Rev.8/82)

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (internal quotations omitted) (citing *Slack*, 529 U.S. at 484).

Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case). Because Movant has not presented a viable ground for relief, a COA is not warranted here.

## IV.   <u>Conclusion</u>

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY** Movant's 28 U.S.C. § 2255 motion to vacate (Doc. 94) and **DENY** Movant a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED and DIRECTED** this  11th  day of  February  2013.


_____

J. CLAY FULLER
United States Magistrate Judge

27